1
2
3
4
5

Joseph H. Harrington
United States Attorney
Brian M. Donovan
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

6
7
8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

9
10
11

UNITED STATES OF AMERICA,

Plaintiff,

vs.

No.

12
13
14

ERIC EUGENE HULL and KRISTINA
HULL, husband and wife; and AGRI-
TRADE LLC , a Washington Limited
Liability Company;

**COMPLAINT FOR
FORECLOSURE AND
DEFICIENCY JUDGMENT**

15
16

Defendants.

17
18

The United States of America (USA), on behalf of the Farm Service Agency

("FSA") of the United States Department of Agriculture, alleges as follows:

19
20
21

1.      Jurisdiction exists pursuant to 28 U.S.C. § 1345 as this action is brought

to collect an indebtedness owed to the United States.

22
23
24
25

2.      Venue is proper pursuant to 28 U.S.C. § 1391, as this action is to

foreclose mortgages and security agreements describing real and personal property

located in the Eastern District of Washington.

26
27
28

3.    Defendants Eric Eugene Hull and Kristina Hull, husband and wife, (collectively

"Defendants Hull") are residents of the Eastern District of Washington. Defendant

Agri-Trade LLC ("Agri-Trade) is an administratively dissolved Washington limited liability company formerly governed and operated by Defendants Hull.

4.      On or about June 3, 2014, Agri-Trade and Defendants Hull executed and delivered to FSA a promissory note in the amount of $75,000.00.  A copy of this note is attached as Exhibit A.

5.      On or about June 3, 2014, Agri-Trade and Defendants Hull executed and delivered to FSA a promissory note in the amount of $140,000.00.  A copy of this note is attached as Exhibit B.

6.      On or about June 3, 2014, to secure payment of the promissory notes described in paragraphs 4 and 5, Agri-Trade and Defendants Hull executed and delivered to FSA a real estate mortgage describing certain real property Agri-Trade owns in Kittitas County, Washington.  This mortgage was recorded June 9, 2014, in the Official Records of Kittitas County, Washington as Recording No. 201406090030. A copy of this mortgage is attached as Exhibit C.

7.      On or about February 11, 2015, Agri-Trade and Defendants Hull executed and delivered to FSA a promissory note in the amount of $25,000.00.  A copy of this note is attached as Exhibit D.

8.      On or about February 11, 2015, Agri-Trade and Defendants Hull executed and delivered to FSA a promissory note in the amount of $75,000.00.  A copy of this note is attached as Exhibit E.

United States' Complaint for Foreclosure - 2

9.      On or about February 11, 2015, for the purpose of securing payment of the promissory notes described in paragraphs 7 and 8, Agri-Trade and Defendants Hull executed and delivered to FSA a real estate mortgage describing certain real property Agri-Trade owns in Kittitas County, Washington.  This mortgage was recorded in the Official Records of Kittitas County, Washington, on February 19, 2015, as Recording No. 201502190013.  A copy of this mortgage is attached as Exhibit F.

10.      On or about February 25, 2015, Agri-Trade and Defendants Hull executed and delivered to FSA a promissory note in the amount of $160,000.00.  A copy of this note is attached as Exhibit G.

11.      On or about February 25, 2015, for the purpose of securing payment of the promissory note described in paragraph 10, and to further secure the promissory notes described in paragraphs 4, 5, 7, and 8, Agri-Trade and Defendants Hull executed and delivered to FSA a real estate mortgage describing certain real property Agri-Trade owns in Kittitas County, Washington.  This mortgage was recorded in the Official Records of Kittitas County, Washington, as Recording No. 201502270003.  A copy of this mortgage is attached as Exhibit H.

a.      11.      To further secure the payment of the promissory notes described in paragraph 4, 5, 7, 8, and 10, Agri-Trade and Defendants Hull executed and delivered to FSA security agreements dated February 28, 2014, July 30, 2014, and December 11, 2014, describing personal property, including farm equipment, livestock, and

United States' Complaint for Foreclosure - 3

crops, owned by Agri-Trade and Defendants Hull.  Copies of these security agreements are attached as Exhibits I, J, and K.  FSA's security interests in the personal property described in the security agreements were perfected by the filing of a UCC-1 financing statement on March 11, 2014, as File No. 2014-070-8764-3, with the Washington State Department of Licensing.  A copy of the financing statement is attached as Exhibit L.

12.    Pursuant to the security agreements and financing statement described in paragraph 11, FSA has a perfected security interest in the following described farm equipment and livestock in the possession of Defendant Agri-Trade and Defendants Hull, located in the State of Washington:

        A.    Oliver Tractor, no serial number

        B.    Beef Cattle (Angus & Angus Cross), unknown number

        C.    Dairy Cattle (Holstein & Holstein Cross), unknown number.

13.    Agri-Trade and Defendants Hull are delinquent in the payment of their debt to FSA.  In accordance with the provisions of the promissory notes, mortgages, security agreements, and financing statement described in paragraphs 4 through 12, and after taking all actions required under applicable regulations, FSA declared the indebtedness owing by Agri-Trade and Defendants Hull to be immediately due and payable by letter sent February 27, 2017, by certified and regular mail.  A copy of the notices of acceleration are attached as Exhibit M.

14.     There is now owing from Agri-Trade and Defendants Hull the sum of $494,203.93, consisting of $438,108.74 principal and $56,095.19 interest accrued through February 11, 2019.  Interest continues to accrue on the unpaid principal at the daily rate of $41.1695. A copy of the Certificate of Indebtedness and FSA Debt Verification are attached as Exhibit N.

15.     The interests of all Defendants are inferior to the interest of FSA.

WHEREFORE, Plaintiff FSA requests judgment against Defendants as follows:

1.     Against Defendant Agri-Trade LLC and Defendants Eric Eugene Hull and Kristina Hull, husband and wife, jointly and severally, and the community composed of them, in the amount of $494,203.93 ($438,108.74 principal and $56,095.19 interest accrued through February 11, 2019); plus interest to accrue at the rate of $41.1695 per day from and after February 11, 2019, to the date of judgment; plus interest from the date of judgment at the legal rate until paid in full, for costs of suit, including the filing fee allowed pursuant to 28 U.S.C. § 2412(a)(2), any costs of enforcing the judgment, any costs incurred by FSA to bid at any foreclosure sale, including but not limited to costs of title work and appraisals, and any other proper relief.

2.     Adjudging and decreeing said amount to be a lien upon the real property described in the mortgages, as well as the farm equipment and livestock described in the security agreements.  FSA requests an order foreclosing its interests created in the mortgages and security agreements executed by Defendant Agri-Trade LLC and

Defendants Eric Eugene Hull and Kristina Hull, husband and wife, and delivered to Plaintiff, describing the real property, farm equipment, and livestock by Defendant Agri-Trade LLC and Defendants Eric Eugene Hull and Kristina Hull, husband and wife, and located in Washington State.

3.      Directing that the mortgages and security agreements be foreclosed and the real property, farm equipment, and livestock described in those security instruments, be sold by the United States Marshal for the Eastern District of Washington in the manner provided by law; that the parties hereto be allowed to bid at the foreclosure sale of real and personal property; that the purchaser at said sale shall be issued a Certificate of Sale of Real Property and be immediately let into possession of said real property; and that at the termination of the redemption period the Marshal issue his Deed; and after the foreclosure sale of the farm equipment and livestock the Marshal shall issue a Bill of Sale.

4.      Directing that the proceeds realized from the sale of the real property, farm equipment and livestock be applied as follows:  First, in payment of attorneys' fees, costs, and expenses of this suit and foreclosing Plaintiff's interests; and second in payment of Plaintiff's judgment.

5.      Directing that if any deficiency remains after application of the proceeds of such sale, that execution may be issued for such deficiency against Defendant Agri-Trade LLC and Defendants Eric Eugene Hull and Kristina Hull, husband and wife,

both individually and the community composed of them, and enforced against any other property subject to execution.

6.     Decreeing that the Defendants and all persons claiming by or through them, be forever barred and foreclosed from asserting any title or interest in and to the real property, farm equipment and livestock owned by Agri-Trade LLC and Eric Eugene Hull and Kristina Hull, husband and wife, except the right of redemption as provided by applicable law.

7.     Such other and further relief as the court may deem just and proper.

RESPECTFULLY SUBMITTED:  February 19, 2019.

> Joseph H. Harrington
> United States Attorney
>
> */s/ Brian M. Donovan*
> Assistant United States Attorney
> Attorneys for Defendant United States

# EXHIBIT A

*This form is available electronically.*

Form Approved - OMB No. 0560-0237
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| **FSA-2026**<br>(12-05-12) | **U.S. DEPARTMENT OF AGRICULTURE**<br>Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name<br>AGRI-TRADE LLC | 2. State<br>WASHINGTON | 3. County<br>KITTITAS |
|---|---|---|
| 4. Case Number<br>56-019-XXXXX3070 | 5. Fund Code<br>44 | 6. Loan Number<br>02 | 7. Date<br>06-03-2014 |

| 8. TYPE OF ASSISTANCE<br><br>OL - Beginning Farmer - Regular - 7 Year | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☐ Initial loan　　☐ Conservation easement　　☐ Deferred payments

☐ Consolidation　　☐ Rescheduling　　☐ Debt write down

☒ Subsequent loan　　☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*　Yakima, Washington　　or at such other place as the Government may later designate in writing, the principal sum of *(b)*　Seventy-Five Thousand and no/100　 dollars *(c)* ($ 75,000.00 　　), plus interest on the unpaid principal balance at the **RATE** of *(d)* Two and One Quarter

percent *(e)*　2.25　　%) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*　-7-

installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 11,701.00 | 6-03-2015 | $ 11,701.00 | 6-03-2016 |
| $ 11,701.00 | 6-03-2017 | $ 11,701.00 | 6-03-2018 |
| $ 11,701.00 | 6-03-2019 | $ 11,701.00 | 6-03-2020 |
| $ 11,701.00 | 6-03-2021 | $ | |

and *(d)* $　N/A　　thereafter on the *(e)* N/A　　　of each *(f)* N/A　　until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*　-7-　　years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial _EW VH_　Date _6·3-14_

**FSA-2026** (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _ScH_  _VH_ Date _6-3-14_

**FSA-2026** (12-05-12)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

As Agri-Trade LLC                                          As Individuals

_____                           _____
ERIC EUGENE HULL                                          ERIC EUGENE HULL

_____                           _____
KRISTINA HULL                                             KRISTINA HULL

                                                          11280 Brickmill Road
                                                          Ellensburg, Washington 98926

---

**NOTE:** *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

# EXHIBIT B

*Form Approved - OMB No. 0560-0237*
This form is available electronically.            *(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| **FSA-2026** (12-05-12) | **U.S. DEPARTMENT OF AGRICULTURE** Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name AGRI-TRADE LLC | | 2. State WASHINGTON | 3. County KITTITAS |
|---|---|---|---|
| 4. Case Number 56-019-XXXXX3070 | 5. Fund Code 41 | 6. Loan Number 03 | 7. Date 06-03-2014 |

| 8. TYPE OF ASSISTANCE | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|
| FO - Beginning Farmer - Regular | ☒ Initial loan   ☐ Conservation easement   ☐ Deferred payments<br>☐ Consolidation   ☐ Rescheduling   ☐ Debt write down<br>☐ Subsequent loan   ☐ Reamortization |

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* Yakima, Washington or at such other place as the Government may later designate in writing, the principal sum of *(b)* One Hundred Forty Thousand and no/100 dollars *(c)* ($ 140,000.00 ), plus interest on the unpaid principal balance at the **RATE** of *(d)* Four percent *(e)* 4.00 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* -40- installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 7,074.00 | 6-03-2015 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and *(d)* $ 7,074.00 thereafter on the *(e)* 3rd day of June of each *(f)* Year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* -40- years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial _[signature]_   Date 6-3-14

**FSA-2026** (12-05-12)

Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _____ Date 6-3-14

**FSA-2026** (12-05-12)

Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

As Agri-Trade LLC

ERIC EUGENE HULL

KRISTINA HULL

As Individuals

ERIC EUGENE HULL

KRISTINA HULL

11280 Brickmill Road
Ellensburg, Washington 98926

NOTE:　The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

# EXHIBIT C

Farm Service Agency
1606 Perry Street
Yakima, Washington 98902

06/09/2014 03:02:21 PM          201406090030
$79.00                          Page 1 of 8
Mortgage    STWT
Kittitas County Auditor

FSA-2029 WA                Position 5              Form Approved - OMB No. 0560-0237
(09-17-08)        (See Page 6 for Privacy Act and Public Burden Statements.)

UNITED STATES DEPARTMENT OF AGRICULTURE                31710
Farm Service Agency

## MORTGAGE FOR WASHINGTON

THIS MORTGAGE ("instrument") is made on _____ June 3 _____, 2014 _____. The mortgagor is
Agri-Trade, LLC
_____ ("Borrower") whose mailing address is _____ 11280 Brickmill Road,
Ellensburg, Washington 98926 _____. This instrument is given to the United States of America,
acting through the Farm Service Agency, United States Department of Agriculture ("Government"), located at
1606 Perry Street, Suite A, Yakima, Washington 98902
This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements
(collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the
Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| June 3, 2014 | $140,000.00 | 4.000% | June 3, 2054 |
| June 3, 2014 | $21,500.00 | 2.250% | June 3, 2015 |
| June 3, 2014 | $75,000.00 | 2.250% | June 3, 2021 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the
above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2)
recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of
all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set
forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government pursuant to the Consolidation Farm and Rural Development Act, 7 U.S.C.
§ 1921 et. seq., as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following
described property situated in the State of Washington, County or Counties of Kittitas
**Assessor's Tax Parcel Numbers:** 18-20-18000-0025 (20674)
**Abbreviated Legal Description :** being a ptn of Sec. 18, Twp 18N, Rge 20E

Additional Legal Description See Exhibit "A" Attached

Initial _____ date 6/4/14          FSA-2029 WA (09-17-08) Page 1 of 7

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

    1.  **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

    2.  **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

    3.  **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by the Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

    4.  **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

    5.  **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in:
(a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

    Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

    Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

    6.  **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et. seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

    7.  **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this

Initial _____ date _6/9/14_                     FSA-2029 WA (09-17-08) Page 2 of 7

lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.    **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9.    **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10.   **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11.   **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12.   **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13.   **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14.   **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any Federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental laws and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15.   **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

Initial _____ date _6/9/14_                                         FSA-2029 WA (09-17-08) Page 3 of 7

16.  **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17.  **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in
the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18.  **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19.  **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20.  **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21.  **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22.  **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23.  **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24.  **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25.  **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

Initial _____ date _____

( (

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Government will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

As Individuals

_____
ERIC EUGENE HULL

_____
KRISTINA HULL

Initial _____ date 6/9/14

As Agri-Trade, LLC

_____
ERIC EUGENE HULL

_____
KRISTINA HULL

11280 Brickmill Road
Ellensburg, Washington 98926

FSA-2029 WA (09-17-08) Page 5 of 7

(                   (

NOTE: *The following statements are made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*
**RETURN THIS COMPLETED FORM TO YOUR STATE FSA OFFICE.**

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.*

Initial _____ date 6/9/14                 FSA-2029 WA (09-17-08) Page 6 of 7

**ACKNOWLEDGMENT**

STATE OF WASHINGTON

COUNTY OF ___Kittitas___ } ss.    (Individual)

On this ___9th___ day of ___June, 2014___ before me personally appeared

___Eric Eugene Hull and Kristina Hull___ , to be known to me to be the same person(s) whose name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:

___2/9/15___

> EDWINA A. CARR
> NOTARY PUBLIC
> STATE OF WASHINGTON
> COMMISSION EXPIRES
> FEBRUARY 9, 2015

NOTARY PUBLIC

STATE OF WASHINGTON

COUNTY OF ___Kittitas___ } ss.    (Limited Liability Company)

The foregoing instrument was acknowledged before me on this ___9th___ day of

___June, 2014___ , by ___Eric Eugene Hull___ , Member and

___Kristina Hull___ , Member of ___Agri-Trade, LLC___ , a

___Limited Liability Company___ on behalf of the Limited Liability Company.

My commission expires:

___2/9/15___

> EDWINA A. CARR
> NOTARY PUBLIC
> STATE OF WASHINGTON
> COMMISSION EXPIRES
> FEBRUARY 9, 2015

NOTARY PUBLIC

STATE OF WASHINGTON

COUNTY OF _____ } ss.    (Partnership)

The foregoing instrument was acknowledged before me on this _____ day of

_____ , by _____ ,

Partners, on behalf of the _____

, a _____ Partnership.

My commission expires:

_____    _____

NOTARY PUBLIC

Initial _____ date 6/9/14    FSA-2029 WA (09-17-08) Page 7 of 7

**EXHIBIT A**

BORROWER:  Agri-Trade, LLC

LEGAL DESCRIPTION:

Parcel 3A of that certain survey recorded October 4, 2005, in Book 31 of Surveys, Page 207, under Auditor's File No. 200510040007, records of Kittitas County, State of Washington; being a portion of Section 18, Township 18 North, Range 20 East, W.M., Kittitas County, State of Washington.  Excepting therefrom any portion which may be lying within the right of way of Cooke County Road.

ASSESSOR'S PARCEL NUMBER:  18-20-1800-0025 (20674)

Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations, and mineral conveyances of record.

Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions.  The irrigation system includes, but is not limited to, the following items:

Initial _____ Date 6/9/14

# EXHIBIT D

This form is available electronically.

Form Approved - OMB No. 0560-0237
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| FSA-2026 (12-05-12) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name AGRI-TRADE LLC | 2. State WASHINGTON | 3. County KITTITAS |
|---|---|---|

| 4. Case Number 56-019-XXXXX3070 | 5. Fund Code 44 | 6. Loan Number 04 | 7. Date February 11, 2015 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE OL - Beginning Farmer - Regular - 1 Year | 9. ACTION REQUIRING PROMISSORY NOTE: ☐ Initial loan ☐ Conservation easement ☐ Deferred payments ☐ Consolidation ☐ Rescheduling ☐ Debt write down ☒ Subsequent loan ☐ Reamortization |
|---|---|

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* Yakima, Washington or at such other place as the Government may later designate in writing, the principal sum of *(b)* Twenty-Five Thousand and no/100 dollars *(c)* ($ 25,000.00 , plus interest on the unpaid principal balance at the RATE of *(d)* Two and Five-eighths percent *(e)* 2.625 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* -1- installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 25,657.00 | 2-11-2016 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and *(d)* $ N/A thereafter on the *(e)* N/A of each *(f)* N/A until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* -1- years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial _____    Date 2-11-15

FSA-2026 (12-05-12)                                                                                    Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _KA_ _____  Date _2-11-15_
      _EEB_

**FSA-2026** (12-05-12)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

As Agri-Trade LLC

ERIC EUGENE HULL

KRISTINA HULL

As Individuals

ERIC EUGENE HULL

KRISTINA HULL

11280 Brickmill Road
Ellensburg, Washington 98926

NOTE:   The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

# EXHIBIT E

This form is available electronically.

Form Approved - OMB No. 0560-0237
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| FSA-2026 (12-05-12) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name AGRI-TRADE LLC | 2. State WASHINGTON | 3. County KITTITAS |
|---|---|---|

| 4. Case Number 56-019-XXXXX3070 | 5. Fund Code 44 | 6. Loan Number 05 | 7. Date February 11, 2015 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE OL - Beginning Farmer - Regular - 7 Year | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☐ Initial loan       ☐ Conservation easement       ☐ Deferred payments

☐ Consolidation       ☐ Rescheduling       ☐ Debt write down

☒ Subsequent loan       ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)* Yakima, Washington or at such other place as the Government may later designate in writing, the principal sum of *(b)* Seventy-Five Thousand and no/100

dollars *(c)* ($ 75,000.00 , plus interest on the unpaid principal balance at the RATE of *(d)* Two and Five-eighths

percent *(e)* 2.625 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may CHANGE THE RATE OF INTEREST in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* -7-

installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 11,869.00 | 2-11-2016 | $ 11,869.00 | 2-11-2017 |
| $ 11,869.00 | 2-11-2018 | $ 11,869.00 | 2-11-2019 |
| $ 11,869.00 | 2-11-2020 | $ 11,869.00 | 2-11-2021 |
| $ 11,869.00 | 2-11-2022 | $ | |

and *(d)* $ N/A thereafter on the *(e)* N/A of each *(f)* N/A until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* -7- years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer*

Initial _EEH_ Date _2/11/15_

**FSA-2026** (12-05-12)                                                                                Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _____ÉÉH_____    Date _____2/11/15_____

**FSA-2026** (12-05-12)

Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

As Agri-Trade LLC

ERIC EUGENE HULL

KRISTINA HULL

As Individuals

ERIC EUGENE HULL

KRISTINA HULL

11280 Brickmill Road
Ellensburg, Washington 98926

**NOTE:** The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

# EXHIBIT F

Farm Service Agency
1606 Perry Street, Suite A
Yakima, Washington 98902

02/19/2015 01:16:42 PM                Page 1 of 8    201502190013
$79.00
Mortgage        FARM SERVICE AGENCY
Kittitas County Auditor

**FSA-2029 WA**                    Position 5                Form Approved - OMB No. 0560-0237
(09-17-08)            *(See Page 6 for Privacy Act and Public Burden Statements.)*

### UNITED STATES DEPARTMENT OF AGRICULTURE
Farm Service Agency

### MORTGAGE FOR WASHINGTON

THIS MORTGAGE ("instrument") is made on _____ February 11 ___, 2015 _____ . The mortgagor is
Agri-Trade, LLC
_____ ("Borrower") whose mailing address is _____ 11280 Brickmill Road,
Ellensburg, Washington 98926 _____ . This instrument is given to the United States of America,
acting through the Farm Service Agency, United States Department of Agriculture ("Government"), located at
1606 Perry Street, Suite A, Yakima, Washington  98902 _____ .
This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements
(collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the
Government, and authorize acceleration of the entire debt upon any default:

|                     |                  | Annual Rate | Due Date of |
| Date of Instrument  | Principal Amount | of Interest | Final Installment |
| February 11, 2015   | $25,000.00       | 2.625%      | February 11, 2016 |
| February 11, 2015   | $75,000.00       | 2.625%      | February 11, 2022 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the
above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2)
recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of
all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set
forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government pursuant to the Consolidation Farm and Rural Development Act, 7 U.S.C.
§ 1921 et. seq., as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following
described property situated in the State of Washington, County or Counties of Kittitas
**Assessor's Tax Parcel Numbers:** 18-20-18000-0025 (20674)
**Abbreviated Legal Description :** being a ptn of Sec. 18, Twp 18N, Rge 20E

Additional Legal Description See Exhibit "A" Attached

Initial _EaH_ date _2/11/15_                FSA-2029 WA (09-17-08) Page 1 of 7

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1.  **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.  **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3.  **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by the Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4.  **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.  **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6.  **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et. seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7.  **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this

Initial _Mk_   date _2-1-15_

FSA-2029 WA (09-17-08) Page 2 of 7

lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.  **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9.  **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10.  **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11.  **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12.  **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13.  **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14.  **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any Federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15.  **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

EEH
Initial _KAA_    date _2-1-15_

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

Initial _KH_ date _2-1-15_

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

As Individuals

_ERIC EUGENE HULL_

_KRISTINA HULL_

As Agri-Trade, LLC

_ERIC EUGENE HULL_

_KRISTINA HULL_

11280 Brickmill Road
Ellensburg, Washington 98926

Initial _EEH_ date _2-1-15_

FSA-2029 WA (09-17-08) Page 5 of 7

NOTE: The following statements are made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR STATE FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.

Initial _____ date 2-7-15

## ACKNOWLEDGMENT

STATE OF WASHINGTON

COUNTY OF ____Kittitas____ } ss.    (Individual)

On this ____11th____ day of ____February, 2015____ before me personally appeared ____Eric Eugene Hull and Kristina Hull____ , to be known to me to be the same person(s) whose name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:
5/05/2017

_____
LISA M. RUFF
NOTARY PUBLIC

STATE OF WASHINGTON

COUNTY OF ____Kittitas____ } ss.    (Limited Liability Company)

The foregoing instrument was acknowledged before me on this ____11th____ day of ____February, 2015____ , by ____Eric Eugene Hull____ , Member and ____Kristina Hull____ , Member of ____Agri-Trade, LLC____ , a ____Limited Liability Company____ on behalf of the Limited Liability Company.

My commission expires:
5/05/2017

_____
LISA M. RUFF
NOTARY PUBLIC

STATE OF WASHINGTON

COUNTY OF _____ } ss.    (Partnership)

The foregoing instrument was acknowledged before me on this _____ day of _____ , by _____ Partners, on behalf of the _____ , a _____ Partnership.

My commission expires:

_____

_____
NOTARY PUBLIC

ESH
Initial _____ date 2-1-15

FSA-2029 WA (09-17-08) Page 7 of 7

## EXHIBIT A

BORROWER: Agri-Trade, LLC

LEGAL DESCRIPTION:

Parcel 3A of that certain survey recorded October 4, 2005, in Book 31 of Surveys, Page 207, under Auditor's File No. 200510040007, records of Kittitas County, State of Washington; being a portion of Section 18, Township 18 North, Range 20 East, W.M., Kittitas County, State of Washington. Excepting therefrom any portion which may be lying within the right of way of Cooke County Road.

ASSESSOR'S PARCEL NUMBER: 18-20-1800-0025 (20674)

Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations, and mineral conveyances of record.

Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions. The irrigation system includes, but is not limited to, the following items:

Initial _____ Date 2-11-15

# EXHIBIT G

*Form Approved - OMB No. 0560-0237*

This form is available electronically.                    *(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| **FSA-2026** (12-05-12) | **U.S. DEPARTMENT OF AGRICULTURE** Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name AGRI-TRADE, LLC | 2. State WASHINGTON | 3. County KITTITAS |
|---|---|---|

| 4. Case Number 56-019-XXXXX3070 | 5. Fund Code 41 | 6. Loan Number 06 | 7. Date **February 25, 2015** |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE FO - Beginning Farmer - Regular | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

**9. ACTION REQUIRING PROMISSORY NOTE:**

☐ Initial loan    ☐ Conservation easement    ☐ Deferred payments

☐ Consolidation    ☐ Rescheduling    ☐ Debt write down

☒ Subsequent loan    ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*   **Yakima, Washington**   or at such other place as the Government may later designate in writing, the principal sum of *(b)* **One Hundred Sixty Thousand and no/100**

dollars *(c)* ($ **160,000.00**   , plus interest on

the unpaid principal balance at the **RATE** of *(d)* **Three and three-quarters**

percent *(e)* **3.750** %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*   **-40-**

installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 7,786.00 | 2-25-2016 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and *(d)* $ **7,786.00**   thereafter on the *(e)* **25th of February**   of each *(f)* **Year**   until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*   **-40-**   years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial _JA EtH_   Date _2/25/15_

**FSA-2026** (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _EEH_  Date _2/25/15_

**FSA-2026** (12-05-12)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

As Agri-Trade LLC                                    As Individuals

ERIC EUGENE HULL                                    ERIC EUGENE HULL

KRISTINA HULL                                       KRISTINA HULL

11280 Brickmill Road
Ellensburg, Washington 98926

**NOTE:**     The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

# EXHIBIT H

Farm Service Agency
1606 Perry Street, Suite A
Yakima, Washington 98902

✓ 201502270003

02/27/2015 11:41:26 AM    Page 1 of 9
$80.00
Mortgage    KITTITAS TITLE ESCROW
Kittitas County Auditor

FSA-2029 WA
(09-17-08)

Position 5
(See Page 6 for Privacy Act and Public Burden Statements.)

Form Approved - OMB No. 0560-0237

# UNITED STATES DEPARTMENT OF AGRICULTURE
Farm Service Agency

⧧80

## MORTGAGE FOR WASHINGTON  KTE  #36058

THIS MORTGAGE ("instrument") is made on    **February 25**    , **2015**    . The mortgagor is
**Agri-Trade, LLC**

("Borrower") whose mailing address is    **11280 Brickmill Road,**
**Ellensburg, Washington 98926**    . This instrument is given to the United States of America,
acting through the Farm Service Agency, United States Department of Agriculture ("Government"), located at
**1606 Perry Street, Suite A, Yakima, Washington  98902**

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements
(collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the
Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| June 3, 2014 | $140,000.00 | 4.000% | June 3, 2054 |
| June 3, 2014 | $21,500.00 | 2.250% | June 3, 2015-PA |
| June 3, 2014 | $75,000.00 | 2.250% | June 3, 2021 |
| February 11, 2015 | $25,000.00 | 2.625% | February 11, 2016 |
| February 11, 2015 | $75,000.00 | 2.625% | February 11, 2022 |
| February 25, 2015 | $160,000.00 | 3.750% | February 25, 2055 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the
above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2)
recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of
all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set
forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government pursuant to the Consolidation Farm and Rural Development Act, 7 U.S.C.
§ 1921 et. seq., as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following
described property situated in the State of Washington, County or Counties of **Kittitas**

**Assessor's Tax Parcel Numbers:** 18-20-18000-0025 (20674); 18-19-13000-0020 (379236) and 18-
19-13000-0011 (464334)

**Abbreviated Legal Description :** being a ptn of Sec. 18, Twp 18N, Rge 20E; N ½ of the NE ¼ of
the SE ¼ and S ½ of the NE ¼ of the SE ¼ of Sec. 13, Twp 18N, Rge 19 E
Additional Legal Description See Exhibit "A" Attached

Initial _____ date _1/25/15_

FSA-2029 WA (09-17-08) Page 1 of 7

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1.    **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.    **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3.    **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by the Government shall be applied in the following order of priority:  (a) to advances made under this instrument; (b) to accrued interest due under the note;  (c) to principal due under the note;  (d) to late charges and other fees and charges.

4.    **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.    **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and  (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6.    **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et. seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

Initial _ERH_ _KM_ date _2/26/15_                    FSA-2029 WA (09-17-08) Page 2 of 7

7.   **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note when interest has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.   **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9.   **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10.   **Repair and operation of property.** Borrower shall:  (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and  (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11.   **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12.   **Transfer or encumbrance of property.**  Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13.   **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14.   **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any Federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15.   **Adjustment; release; waiver; forbearance.**  In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and  (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

Initial _KA4SH_ date _1/25/16_

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument and the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

Initial _VV SAH_ date _2/26/15_

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law; and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

As Individuals

_____
ERIC EUGENE HULL

_____
KRISTINA HULL

As Agri-Trade, LLC

_____
ERIC EUGENE HULL

_____
KRISTINA HULL

11280 Brickmill Road
Ellensburg, Washington 98926

Initial _____ date 2/25/15

FSA-2029 WA (09-17-08) Page 5 of 7

NOTE: The following statements are made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR STATE FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.

Initial _VA BLH_ date _2/25/15_          FSA-2029 WA (09-17-08) Page 6 of 7

**ACKNOWLEDGMENT**

STATE OF WASHINGTON

COUNTY OF __Kittitas__ } ss.    (Individual)

On this _____25th_____ day of __February, 2015__ before me personally appeared

__Eric Eugene Hull and Kristina Hull__ , to be known to me to be the same person(s) whose

name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the

instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:

__4-9-18__

_____

NOTARY PUBLIC

STATE OF WASHINGTON

COUNTY OF __Kittitas__ } ss.

(Limited Liability Company)

The foregoing instrument was acknowledged before me on this __25th__ day of

__February, 2015__ , by __Eric Eugene Hull__

__Kristina Hull__ , Member of __Agri-Trade, LLC__ , a

__Limited Liability Company__ on behalf of the Limited Liability Company.

My commission expires:

__4-9-18__

BRANDON J. HUBER
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
APRIL 9, 2018

_____

NOTARY PUBLIC

STATE OF WASHINGTON

COUNTY OF _____ } ss.    (Partnership)

The foregoing instrument was acknowledged before me on this _____ day of

_____ , by _____

Partners, on behalf of the _____

, a _____ Partnership.

My commission expires:

BRANDON J. HUBER
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
APRIL 9, 2018

_____

NOTARY PUBLIC

Initial _KH EH_ date _2/25/15_

FSA-2029 WA (09-17-08) Page 7 of 7

**EXHIBIT A**

BORROWER: Agri-Trade, LLC

LEGAL DESCRIPTION:

**Parcel A:**

Parcel 3A of that certain survey recorded October 4, 2005, in Book 31 of Surveys, Page 207, under Auditor's File No. 200510040007, records of Kittitas County, State of Washington; being a portion of Section 18, Township 18 North, Range 20 East, W.M., Kittitas County, State of Washington. Excepting therefrom any portion which may be lying within the right of way of Cooke County Road.

ASSESSOR'S PARCEL NUMBER:  18-20-1800-0025 (20674)

**Parcel B:**

The North Half of the Northeast Quarter of the Southeast Quarter of Section 13, Township 18 North, Range 19 East, W.M., in the County of Kittitas, State of Washington;

EXCEPT the right of way of County Road

ASSESSOR'S PARCEL NUMBER:  18-19-13000-0020 (379236)

**Parcel C:**

The South Half of the Northeast Quarter of the Southeast Quarter of Section 13, Township 18 North, Range 19 East, W.M., in the County of Kittitas, State of Washington

EXCEPT that portion, thereof, conveyed to the Kittitas Reclamation District by Warranty Deed recorded September 26, 1930, under Auditor's File No. 102450;

AND EXCEPT the right of way of County Road

ASSESSOR'S PARCEL NUMBER:  18-19-13000-0011 (464334)

Initial _KH GG H_ Date _2/25/15_

**EXHIBIT A**

Subject to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations, and mineral conveyances of record.

Fixtures include all irrigation equipment, now owned and used, in whole or in part, to irrigate the mortgaged property, together with all similar goods which may be acquired at any time, any additions, replacements, substitutions and accessions. The irrigation system includes, but is not limited to, the following items:

Initial SGH [initials]  Date 2/25/15

# EXHIBIT I

This form is available electronically.

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Public Burden Statements)*

| FSA-2028<br>(09-03-10) | U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency | Position 1 |
| --- | --- | --- |

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** *dated (a)* __February 28__ __,2014__ __ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **AGRI-TRADE LLC, ERIC EUGENE HULL, KRISTINA HULL**

(Debtor), whose mailing address is (c) __11280 BRICK MILL RD, ELLENSBURG, WA 98926-6927__

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial ___EEH___ Date __22-5-14__

**FSA-2028** (09-03-10)

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| Edwin Nestler | 44 | KITTITAS, WA | 1421 Cooke Canyon Road,<br>Ellensburg |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _CcGcf_    Date _22-5-14_

FSA-2028 (09-03-10)

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*
    Washington

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor | Oliver | | Good | | |

Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial ΕΕΗ _____ Date 22-5-14

**FSA-2028** (09-03-10)

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

Washington

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 2 | Dairy Cattle-Brdg. - Cows | Holstein | | | | |

Initial *EEH* Date 22-5-14

**FSA-2028** (09-03-10)

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

Crops, livestock, supplies, farm products, and farm equipment and those to be acquired in the future. All accounts, general intangibles, including, but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _ECH_ Date _22-5-14_

**FSA-2028** (09-03-10)

**4. IT IS FURTHER AGREED THAT:**

(a) Until default, Debtor may retain possession of the collateral.

(b) **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

   (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial  Date 22-5-14

**FSA-2028** (09-03-10)

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _____
AGRI-TRADE LLC

6B. *(Date)* _22—5-14_

_____
ERIC EUGENE HULL

*(Date)* _22-5-14_

_____
KRISTINA HULL

*(Date)* _22-5-14_

**NOTE:**    *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).*

*To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

# EXHIBIT J

This form is available electronically.

**FSA-2028**
(09-03-10)

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Public Burden Statements)

**U.S. DEPARTMENT OF AGRICULTURE**
**Farm Service Agency**

Position 1

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** *dated (a)* ___July 30___ , ___2014___ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) __AGRI-TRADE LLC, ERIC EUGENE HULL, KRISTINA HULL__

(Debtor), whose mailing address is (c) __11280 BRICK MILL RD, ELLENSBURG, WA 98926-6927__

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _EEH_ Date _8/5/14_

**FSA-2028** (09-03-10)

Page 2 of 7

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| Agri-Trade, LLC | 44 | KITTITAS, WA | 1421 Cooke Canyon Road,<br>Ellensburg |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _____ Date 8/5/14

FSA-2028 (09-03-10)                                                                          Page 3 of 7

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*
____Washington_____:

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|------|------|------|------|------|------|------|------|
| 1 | 1 | Tractor | Oliver | | | | |

Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _____ Date 8/5/14

**FSA-2028** (09-03-10)

<div align="right">Page 4 of 7</div>

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

_____Washington_____:

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 2 | Dairy Cattle-Brdg - Cows | Holstein | | | | |
| 2 | 44 | Cattle - Beef - Breeding Cows | Angus | Black /Red | | | |



Initial _____  Date __8/5/14__

**FSA-2028** (09-03-10)                                                                                    Page 5 of 7

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

Crops, livestock, supplies, farm products, and farm and other equipment and those to be acquired in the future. All accounts, general intangibles, including, but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.<?xml:namespace prefix = o ns = "urn:schemas-microsoft-com:office:office" />

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _____ Date _8/5/14_

**FSA-2028** (09-03-10)

## 4. IT IS FURTHER AGREED THAT:

(a) Until default, Debtor may retain possession of the collateral.

(b) **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

   (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _____ Date 8/5/14

**FSA-2028** (09-03-10)

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

5. **CERTIFICATION**

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A.
for AGRI-TRADE LLC

ERIC EUGENE HULL

KRISTINA HULL

6B. *(Date)* 8/5/14

*(Date)* 8/5/14

*(Date)* 8/5/14

NOTE: *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer

# EXHIBIT K

This form is available electronically.

| | | Form Approved - OMB No. 0560-0238 |
|---|---|---|
| | | *(See Page 7 for Privacy Act and Public Burden Statements)* |
| **FSA-2028** | **U.S. DEPARTMENT OF AGRICULTURE** | |
| (09-03-10) | **Farm Service Agency** | Position 1 |

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT**, *dated (a)* ___December 11___ , **2014** _____ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **AGRI-TRADE LLC, ERIC EUGENE HULL, KRISTINA HULL**

(Debtor), whose mailing address is (c) 11280 BRICK MILL RD, ELLENSBURG, WA 98926-6927

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE**, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _____ Date _____  2/11/15

**FSA-2028** (09-03-10)

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| Agri-Trade, LLC | 44 | KITTITAS, WA | 1421 Cooke Canyon Road,<br>Ellensburg |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _EEH_    Date _2/11/15_

**FSA-2028** (09-03-10)

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*
    Washington

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor | Oliver | | | | |
| | | | | | | | |

Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _____  Date  2/18/15

**FSA-2028** (09-03-10)

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

Washington

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 44 | Cattle - Beef - Calves | | | 300 | | |
| 2 | 2 | Dairy Cattle - Calves | | | 150 | | |
| 3 | 2 | Dairy Cattle-Brdg. - Cows | Holstein | | | | |
| 4 | 44 | Cattle - Beef - Breeding Cows | Angus | | | | |

Initial _____ Date _____  2/11/15

**FSA-2028** (09-03-10)

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

Crops, livestock, supplies, farm products, and farm and other equipment and those to be acquired in the future. All accounts, general intangibles, including, but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; (2) any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced; (2) comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; (3) care for and maintain collateral in a good and husbandlike manner; (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; (5) permit Secured Party to inspect the collateral at any reasonable time; (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and (8) maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all (1) indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and (4) fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _SSH_   Date _2/10/15_

**FSA-2028** (09-03-10)

## 4. IT IS FURTHER AGREED THAT:

(a) Until default, Debtor may retain possession of the collateral.

(b) **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

    (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _____ Date _____

EEH   2/11/15

**FSA-2028** (09-03-10)

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

5. **CERTIFICATION**

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A.

AGRI-TRADE LLC

6B. *(Date)* 2/11/15

ERIC EUGENE HULL

*(Date)* 2/11/15

KRISTINA HULL

*(Date)* 2-11-15

NOTE: *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

# EXHIBIT L

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>Sandy Christensen 5094545746 | Date of Filing : 03/11/2014<br>Time of Filing : 12:02:00 PM<br>File Number    : 2014-070-8764-3<br>Lapse Date    : 03/11/2019 |
| B. E-MAIL CONTACT AT FILER (optional)<br>sandy.christensen@wa.usda.gov | |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address)<br>Sandy Christensen 5094545746<br>Farm Service Agency<br>1606 Perry Street, Suite A<br>Yakima   WA 98902 | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME:  Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME<br>Agri-Trade, LLC | | | |
|---|---|---|---|
| OR | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS<br>11280 Brickmill Road | CITY<br>Ellensburg | STATE WA / POSTAL CODE 98926 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 2b. INDIVIDUAL'S SURNAME<br>Hull | FIRST PERSONAL NAME<br>Eric | ADDITIONAL NAME(S)/INITIAL(S)<br>Eugene | SUFFIX |
| 2c. MAILING ADDRESS<br>11280 Brickmill Road | CITY<br>Ellensburg | STATE WA / POSTAL CODE 98926 | COUNTRY USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME<br>United States of America acting through U.S. Department of Agriculture | | | |
|---|---|---|---|
| OR | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS<br>1606 Perry Street, Suite A | CITY<br>Yakima | STATE WA / POSTAL CODE 98902 | COUNTRY USA |

4. COLLATERAL  This financing statement covers the following collateral

Crops, livestock, supplies, farm products, and farm and other equipment and those to be acquired in the future. All accounts, general intangibles, including, but not limited to, all debtor's rights derived from debtor's participation in an agriculture cooperative (such as co-op retains, equities and revolving funds) and all debtor's rights to payments derived from present or future government farm programs, contracts, or subsidies.

| 5. Check only if applicable and check only one box. Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | | ☐ being administered by a Decedent's Personal Representative | |
|---|---|---|---|
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: | |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | | ☑ Agricultural Lien ☐ Non-UCC Filing | |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | | | |
| 8. OPTIONAL FILER REFERENCE DATA<br>1NE | | | |

## UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

| 18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐ | |
|---|---|
| **18a. ORGANIZATION'S NAME** | |
| Agri-Trade, LLC | |
| OR **18b. INDIVIDUAL'S SURNAME** | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

Date of Filing : 03/11/2014
Time of Filing : 12:02:00 PM
File Number    : 2014-070-8764-3
Lapse Date     : 03/11/2019

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME   Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR **19b. INDIVIDUAL'S SURNAME** Hull | FIRST PERSONAL NAME Kristina | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS 11280 Brickmill Road | CITY Ellensburg | STATE WA | POSTAL CODE 98926 | COUNTRY USA |

20. ADDITIONAL DEBTOR'S NAME   Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

21. ADDITIONAL DEBTOR'S NAME   Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

22 ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

23 ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

24. MISCELLANEOUS:

# EXHIBIT M



| United States Department of Agriculture | Farm and Foreign Agricultural Services | Farm Service Agency | Yakima County Farm Service Agency<br>1606 Perry Street, Suite A<br>Yakima, WA 98902-5769<br>Phone: 509-454-5743, Ext. 2<br>FAX:   855-843-1174 |

February 27, 2017



Agri-Trade, LLC
25964 Clover Street
Esparto, CA  95627

**CERTFIELD MAIL**
7010 2780 0000 8568 7447

Subject: **NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARM SERVICE AGENCY AND DEMAND FOR PAYMENT OF THAT DEBT**

Dear Mr. and Mrs. Hull:

PLEASE NOTE that the entire indebtedness due on the promissory notes and/or assumption agreements which evidence the loans received by you from the United States of America, acting through the Farm Service Agency, United States Department of Agriculture is now declared immediately due and payable.  They are described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note | June 3, 2014 | $75,000.00 |
| Promissory Note | June 3, 2014 | $140,000.00 |
| Promissory Note | February 11, 2015 | $25,000.00 |
| Promissory Note | February 11, 2015 | $75,000.00 |
| Promissory Note | February 25, 2015 | $160,000.00 |

The promissory notes or assumption agreements are secured by real estate mortgages, deeds of trust, security agreement, and financing statements, etc., described and perfected as follows:

| Security Instrument | Date | Recording Office | Recording Information |
|---|---|---|---|
| UCC-1 | March 11, 2014 | WA State Department of Licensing | 2014-070-8764-3 |
| Real Estate Mortgage | June 9, 2014 | Kittitas County Auditor | 201406090030 |
| Real Estate Mortgage | February 19, 2015 | Kittitas County Auditor | 201502190013 |
| Real Estate Mortgage | February 27, 2015 | Kittitas County Auditor | 201502270003 |
| Security Agreement | February 28, 2014 | | |
| Security Agreement | July 30, 2014 | | |
| Security Agreement | December 11, 2014 | | |

USDA is an equal opportunity provider, employer and lender

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instruments.

The reasons for the acceleration of your indebtedness are as follows: Failure to make payments as agreed.

The indebtedness due is $432,792.27 unpaid principal, and $26,914.01 unpaid interest, as of $459,706.28, plus additional interest accruing at the rate of $40.6139 per day thereafter, plus any advances made by the United States for the protection of its security and interest accruing on any such advances and any shared appreciation. Unless full payment of your indebtedness is received made by one of the methods described below within 30 days from the date of this letter, the United States will foreclose the above described security instruments and pursue any other available remedies.

If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.

Full payment may be made in any of the following ways:

A) CASH

Payment should be made by cashier's check, certified check, or postal money order payable to the Farm Service Agency and delivered to FSA at 1606 Perry Street, Suite A, Yakima, WA 98902. If you submit to the UNITED STATES any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the Farm Service Agency and yourself, that payment WILL NOT CANCEL the effect of this notice. If such insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the UNITED STATES may have for breach of any promissory note or covenant in the security instruments will result and the Farm Service Agency may proceed as though no such payment had been made.

B) TRANSFER AND ASSUMPTION

You may transfer the collateral for your loans to someone who is willing and able to assume the debt. Contact FSA immediately if you are interested in this.

C) SALE

You may sell the collateral for your loans for its market value and send the proceeds to FSA or to other creditors with liens prior to FSA's lien. Contact FSA immediately if you are interested in this.

**5-FLP, Exhibit 49**

D) VOLUNTARY CONVEYANCE

You may convey all of your collateral to the Government. Contact FSA immediately if you are interested in this.

If you have not been advised of your rights to request deferral of payments or other servicing options you should contact FSA at the above mentioned address within 15 days of the receipt of this notice.

If you fail to comply with the requirements outlined in this notice within the next 30 days, the United States plans to proceed with foreclosure/liquidation.

YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE YOUR FSA DEBTS.

*UNITED STATES OF AMERICA*

*BY:*

District Director
Farm Service Agency
United States Department of Agriculture

Notice to Customers Presenting Checks
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. For inquires, please contact your local office.

Privacy Act – A privacy Act Statement required by 5.U.S.C. § 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index.html), or call toll free at (1-866-945-7920) to obtain a copy by mail. Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method.

cc: Farm Loan Chief
    Farm Loan Manager

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com™

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7010 2780 0000 8568 7454

Sent To *Eric + Kristina Hull*
Street, Apt. No.; or PO Box No.
City, State, ZIP+4

PS Form 3800, August 2006                  See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Eric E. Hull*
*Kristina Hull*
*25964 Clover St.*
*Esparto, CA 95627*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                  *3.2.17*

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

RECEIVED
MAR 06 2017

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)    7010 2780 0000 8568 7454

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

 **USDA** | United States Department of Agriculture | Farm and Foreign Agricultural Services | Farm Service Agency | Yakima County Farm Service Agency
1606 Perry Street, Suite A
Yakima, WA 98902-5769
Phone: 509-454-5743, Ext. 2
FAX: 855-843-1174

February 27, 2017



**CERTIFIED MAIL**
7010 2780 0000 8568 7454

Eric E. Hull
Kristina Hull
25964 Clover Street
Esparto, CA 95627

Subject: **NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARM SERVICE AGENCY AND DEMAND FOR PAYMENT OF THAT DEBT**

Dear Mr. and Mrs. Hull:

PLEASE NOTE that the entire indebtedness due on the promissory notes and/or assumption agreements which evidence the loans received by you from the United States of America, acting through the Farm Service Agency, United States Department of Agriculture is now declared immediately due and payable. They are described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note | June 3, 2014 | $75,000.00 |
| Promissory Note | June 3, 2014 | $140,000.00 |
| Promissory Note | February 11, 2015 | $25,000.00 |
| Promissory Note | February 11, 2015 | $75,000.00 |
| Promissory Note | February 25, 2015 | $160,000.00 |

The promissory notes or assumption agreements are secured by real estate mortgages, deeds of trust, security agreement, and financing statements, etc., described and perfected as follows:

| Security Instrument | Date | Recording Office | Recording Information |
|---|---|---|---|
| UCC-1 | March 11, 2014 | WA State Department of Licensing | 2014-070-8764-3 |
| Real Estate Mortgage | June 9, 2014 | Kittitas County Auditor | 201406090030 |
| Real Estate Mortgage | February 19, 2015 | Kittitas County Auditor | 201502190013 |
| Real Estate Mortgage | February 27, 2015 | Kittitas County Auditor | 201502270003 |
| Security Agreement | February 28, 2014 | | |
| Security Agreement | July 30, 2014 | | |
| Security Agreement | December 11, 2014 | | |

USDA is an equal opportunity provider, employer and lender

**5-FLP, Exhibit 49**

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instruments.

The reasons for the acceleration of your indebtedness are as follows: Failure to make payments as agreed.

The indebtedness due is $432,792.27 unpaid principal, and $26,914.01 unpaid interest, as of $459,706.28, plus additional interest accruing at the rate of $40.6139 per day thereafter, plus any advances made by the United States for the protection of its security and interest accruing on any such advances and any shared appreciation. Unless full payment of your indebtedness is received made by one of the methods described below within 30 days from the date of this letter, the United States will foreclose the above described security instruments and pursue any other available remedies.

If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.

Full payment may be made in any of the following ways:

   A) CASH

      Payment should be made by cashier's check, certified check, or postal money order payable to the Farm Service Agency and delivered to FSA at 1606 Perry Street, Suite A, Yakima, WA 98902. If you submit to the UNITED STATES any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the Farm Service Agency and yourself, that payment WILL NOT CANCEL the effect of this notice. If such insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the UNITED STATES may have for breach of any promissory note or covenant in the security instruments will result and the Farm Service Agency may proceed as though no such payment had been made.

   B) TRANSFER AND ASSUMPTION

      You may transfer the collateral for your loans to someone who is willing and able to assume the debt. Contact FSA immediately if you are interested in this.

   C) SALE

      You may sell the collateral for your loans for its market value and send the proceeds to FSA or to other creditors with liens prior to FSA's lien. Contact FSA immediately if you are interested in this.

5-FLP, Exhibit 49

D)  VOLUNTARY CONVEYANCE

You may convey all of your collateral to the Government.  Contact FSA immediately if you are interested in this.

If you have not been advised of your rights to request deferral of payments or other servicing options you should contact FSA at the above mentioned address within 15 days of the receipt of this notice.

If you fail to comply with the requirements outlined in this notice within the next 30 days, the United States plans to proceed with foreclosure/liquidation.

YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE YOUR FSA DEBTS.

*UNITED STATES OF AMERICA*

*BY:*

District Director
Farm Service Agency
United States Department of Agriculture

Notice to Customers Presenting Checks
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.  For inquires, please contact your local office.

Privacy Act – A privacy Act Statement required by 5.U.S.C. § 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index.html), or call toll free at (1-866-945-7920) to obtain a copy by mail.  Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method.

cc:  Farm Loan Chief
        Farm Loan Manager

**U.S. Postal Service**
**CERTIFIED MAIL**... **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com...

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To  Agri - Trade, LLC
Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

7010 2780 0000 8568 7447

PS Form 3800, August 2006                See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Agri - Trade, LLC
25964 Clover St.
Esparto, CA 95627

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                      ☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery
                                     3.2.17

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

RECEIVED
MAR 06 2017

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7010 2780 0000 8568 7447

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540



| **USDA** | United States<br>Department<br>of Agriculture | Farm and Foreign<br>Agricultural<br>Services | Farm<br>Service<br>Agency | Yakima County Farm Service Agency<br>1606 Perry Street, Suite A<br>Yakima, WA 98902-5769<br>Phone: 509-454-5743, Ext. 2<br>FAX:   855-843-1174 |

February 27, 2017



**REGULAR MAIL**

Agri-Trade, LLC
25964 Clover Street
Esparto, CA  95627

Subject: **NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARM SERVICE
AGENCY AND DEMAND FOR PAYMENT OF THAT DEBT**

Dear Mr. and Mrs. Hull:

PLEASE NOTE that the entire indebtedness due on the promissory notes and/or assumption
agreements which evidence the loans received by you from the United States of America, acting
through the Farm Service Agency, United States Department of Agriculture is now declared
immediately due and payable.  They are described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note | June 3, 2014 | $75,000.00 |
| Promissory Note | June 3, 2014 | $140,000.00 |
| Promissory Note | February 11, 2015 | $25,000.00 |
| Promissory Note | February 11, 2015 | $75,000.00 |
| Promissory Note | February 25, 2015 | $160,000.00 |

The promissory notes or assumption agreements are secured by real estate mortgages, deeds of
trust, security agreement, and financing statements, etc., described and perfected as follows:

| Security Instrument | Date | Recording Office | Recording Information |
|---|---|---|---|
| UCC-1 | March 11, 2014 | WA State Department of<br>Licensing | 2014-070-8764-3 |
| Real Estate Mortgage | June 9, 2014 | Kittitas County Auditor | 201406090030 |
| Real Estate Mortgage | February 19, 2015 | Kittitas County Auditor | 201502190013 |
| Real Estate Mortgage | February 27, 2015 | Kittitas County Auditor | 201502270003 |
| Security Agreement | February 28, 2014 | | |
| Security Agreement | July 30, 2014 | | |
| Security Agreement | December 11, 2014 | | |

USDA is an equal opportunity provider, employer and lender

**5-FLP, Exhibit 49**

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instruments.

The reasons for the acceleration of your indebtedness are as follows: Failure to make payments as agreed.

The indebtedness due is $432,792.27 unpaid principal, and $26,914.01 unpaid interest, as of $459,706.28, plus additional interest accruing at the rate of $40.6139 per day thereafter, plus any advances made by the United States for the protection of its security and interest accruing on any such advances and any shared appreciation. Unless full payment of your indebtedness is received made by one of the methods described below within 30 days from the date of this letter, the United States will foreclose the above described security instruments and pursue any other available remedies.

If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.

Full payment may be made in any of the following ways:

A) CASH

Payment should be made by cashier's check, certified check, or postal money order payable to the Farm Service Agency and delivered to FSA at 1606 Perry Street, Suite A, Yakima, WA 98902. If you submit to the UNITED STATES any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the Farm Service Agency and yourself, that payment WILL NOT CANCEL the effect of this notice. If such insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the UNITED STATES may have for breach of any promissory note or covenant in the security instruments will result and the Farm Service Agency may proceed as though no such payment had been made.

B) TRANSFER AND ASSUMPTION

You may transfer the collateral for your loans to someone who is willing and able to assume the debt. Contact FSA immediately if you are interested in this.

C) SALE

You may sell the collateral for your loans for its market value and send the proceeds to FSA or to other creditors with liens prior to FSA's lien. Contact FSA immediately if you are interested in this.

**5-FLP, Exhibit 49**

D) VOLUNTARY CONVEYANCE

You may convey all of your collateral to the Government. Contact FSA immediately if you are interested in this.

If you have not been advised of your rights to request deferral of payments or other servicing options you should contact FSA at the above mentioned address within 15 days of the receipt of this notice.

If you fail to comply with the requirements outlined in this notice within the next 30 days, the United States plans to proceed with foreclosure/liquidation.

YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE YOUR FSA DEBTS.

UNITED STATES OF AMERICA

BY:

District Director
Farm Service Agency
United States Department of Agriculture

Notice to Customers Presenting Checks
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. For inquires, please contact your local office.

Privacy Act – A privacy Act Statement required by 5.U.S.C. § 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index.html), or call toll free at (1-866-945-7920) to obtain a copy by mail. Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method.

cc: Farm Loan Chief
    Farm Loan Manager



| **USDA** | United States Department of Agriculture | Farm and Foreign Agricultural Services | Farm Service Agency | Yakima County Farm Service Agency 1606 Perry Street, Suite A Yakima, WA 98902-5769 Phone: 509-454-5743, Ext. 2 FAX:   855-843-1174 |
|---|---|---|---|---|

February 27, 2017



**REGULAR MAIL**

Eric E. Hull
Kristina Hull
25964 Clover Street
Esparto, CA  95627

Subject: **NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARM SERVICE AGENCY AND DEMAND FOR PAYMENT OF THAT DEBT**

Dear Mr. and Mrs. Hull:

PLEASE NOTE that the entire indebtedness due on the promissory notes and/or assumption agreements which evidence the loans received by you from the United States of America, acting through the Farm Service Agency, United States Department of Agriculture is now declared immediately due and payable.  They are described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note | June 3, 2014 | $75,000.00 |
| Promissory Note | June 3, 2014 | $140,000.00 |
| Promissory Note | February 11, 2015 | $25,000.00 |
| Promissory Note | February 11, 2015 | $75,000.00 |
| Promissory Note | February 25, 2015 | $160,000.00 |

The promissory notes or assumption agreements are secured by real estate mortgages, deeds of trust, security agreement, and financing statements, etc., described and perfected as follows:

| Security Instrument | Date | Recording Office | Recording Information |
|---|---|---|---|
| UCC-1 | March 11, 2014 | WA State Department of Licensing | 2014-070-8764-3 |
| Real Estate Mortgage | June 9, 2014 | Kittitas County Auditor | 201406090030 |
| Real Estate Mortgage | February 19, 2015 | Kittitas County Auditor | 201502190013 |
| Real Estate Mortgage | February 27, 2015 | Kittitas County Auditor | 201502270003 |
| Security Agreement | February 28, 2014 | | |
| Security Agreement | July 30, 2014 | | |
| Security Agreement | December 11, 2014 | | |

USDA is an equal opportunity provider, employer and lender

**5-FLP, Exhibit 49**

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instruments.

The reasons for the acceleration of your indebtedness are as follows: Failure to make payments as agreed.

The indebtedness due is $432,792.27 unpaid principal, and $26,914.01 unpaid interest, as of $459,706.28, plus additional interest accruing at the rate of $40.6139 per day thereafter, plus any advances made by the United States for the protection of its security and interest accruing on any such advances and any shared appreciation. Unless full payment of your indebtedness is received made by one of the methods described below within 30 days from the date of this letter, the United States will foreclose the above described security instruments and pursue any other available remedies.

If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.

Full payment may be made in any of the following ways:

A) CASH

Payment should be made by cashier's check, certified check, or postal money order payable to the Farm Service Agency and delivered to FSA at 1606 Perry Street, Suite A, Yakima, WA  98902. If you submit to the UNITED STATES any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the Farm Service Agency and yourself, that payment WILL NOT CANCEL the effect of this notice. If such insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the UNITED STATES may have for breach of any promissory note or covenant in the security instruments will result and the Farm Service Agency may proceed as though no such payment had been made.

B) TRANSFER AND ASSUMPTION

You may transfer the collateral for your loans to someone who is willing and able to assume the debt. Contact FSA immediately if you are interested in this.

C) SALE

You may sell the collateral for your loans for its market value and send the proceeds to FSA or to other creditors with liens prior to FSA's lien. Contact FSA immediately if you are interested in this.

5-FLP, Exhibit 49

### D)  VOLUNTARY CONVEYANCE

You may convey all of your collateral to the Government.  Contact FSA immediately if you are interested in this.

If you have not been advised of your rights to request deferral of payments or other servicing options you should contact FSA at the above mentioned address within 15 days of the receipt of this notice.

If you fail to comply with the requirements outlined in this notice within the next 30 days, the United States plans to proceed with foreclosure/liquidation.

YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE YOUR FSA DEBTS.

UNITED STATES OF AMERICA

BY:

District Director
Farm Service Agency
United States Department of Agriculture

Notice to Customers Presenting Checks
When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.  For inquires, please contact your local office.

Privacy Act – A privacy Act Statement required by 5.U.S.C. § 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index.html), or call toll free at (1-866-945-7920) to obtain a copy by mail.  Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method.

cc:  Farm Loan Chief
     Farm Loan Manager

# EXHIBIT N

# FARM SERVICE AGENCY
## SPOKANE, WASHINGTON

## CERTIFICATE OF INDEBTEDNESS

Debtor's Name and Address:

| | | |
|---|---|---|
| Agri-Trade LLC | Eric Hull | Kristina Hull |
| 373 Boylson Rd | 373 Boylson Rd | 373 Boylson Rd |
| Moses Lake, WA 98837 | Moses Lake, WA 98837 | Moses Lake, WA 98837 |

Total debt due United States as of February 11, 2019 is $494,203.93.

I certify the Farm Service Agency (FSA) records show the debtors named above are indebted to the United States in the amount stated above, plus interest on the principal balance of $438,108.74 from February 11, 2019 accruing at the rate of $41.1695 per day.

The claim arose in connection with Operating Loans (OL) and Farm Ownership Loans (FO) made by the Farm Service Agency. The borrower's FSA loans were accelerated February 27, 2017.

**CERTIFICATION:** Pursuant to 28 USC @ 1746, I certify under penalty of perjury that the foregoing is true and correct.

February 11, 2019

Houston Bruck
Farm Loan Program Chief

| Customer: | **AGRI-TRADE LLC** | Case #: | **56-019-*****3070** | |
|---|---|---|---|---|

**Total Payoff**

Customer Name : AGRI-TRADE LLC
Case Number   : 56-019-*****3070
Accrual Date   : 02/11/2019

The Total displays the sum of the selected loans.

**Payoff Summary**

| Fund Code / Loan # | Date of Loan | Principal Balance | Total Interest | Daily Int. Accrual | Total Payoff |
|---|---|---|---|---|---|
| 4420-02 | 06/03/2014 | $64,833.93 | $5,355.46 | $3.9966 | $70,189.39 |
| | **Date of Last Cash Payment: 06/11/2015** | | | | |
| | **Principal Amounts** | | | **Unpaid Principal:** | **$64,833.93** |
| | | | | **Unpaid Principal Advance:** | **$0.00** |
| | **Interest Amounts** | | | **Accrued Interest:** | **$5,355.46** |
| | | | | **Accrued Interest Advance:** | **$0.00** |
| 4120-03 | 06/03/2014 | $140,015.74 | $20,442.26 | $15.3442 | $160,458.00 |
| | **Date of Last Cash Payment: 06/11/2015** | | | | |
| | **Principal Amounts** | | | **Unpaid Principal:** | **$138,648.74** |
| | | | | **Unpaid Principal Advance:** | **$1,367.00** |
| | **Interest Amounts** | | | **Accrued Interest:** | **$20,360.47** |
| | | | | **Accrued Interest Advance:** | **$81.79** |
| 4420-04 | 02/11/2015 | $2,934.60 | $180.02 | $0.2110 | $3,114.62 |
| | **Date of Last Cash Payment: 10/11/2016** | | | | |
| | **Principal Amounts** | | | **Unpaid Principal:** | **$2,934.60** |
| | | | | **Unpaid Principal Advance:** | **$0.00** |
| | **Interest Amounts** | | | **Accrued Interest:** | **$180.02** |
| | | | | **Accrued Interest Advance:** | **$0.00** |
| 4420-05 | 02/11/2015 | $66,375.00 | $6,262.99 | $4.7735 | $72,637.99 |
| | **Date of Last Cash Payment:** | | | | |
| | **Principal Amounts** | | | **Unpaid Principal:** | **$66,375.00** |
| | | | | **Unpaid Principal Advance:** | **$0.00** |
| | **Interest Amounts** | | | **Accrued Interest:** | **$6,262.99** |
| | | | | **Accrued Interest Advance:** | **$0.00** |
| 4120-06 | 02/25/2015 | $163,949.47 | $23,854.46 | $16.8442 | $187,803.93 |
| | **Date of Last Cash Payment:** | | | | |
| | **Principal Amounts** | | | **Unpaid Principal:** | **$160,000.00** |
| | | | | **Unpaid Principal Advance:** | **$3,949.47** |
| | **Interest Amounts** | | | **Accrued Interest:** | **$23,753.42** |
| | | | | **Accrued Interest Advance:** | **$101.04** |
| **Total** | | **$438,108.74** | **$56,095.19** | **$41.1695** | **$494,203.93** |
| | **Principal Amounts** | | | **Unpaid Principal:** | **$432,792.27** |
| | | | | **Unpaid Principal Advance:** | **$5,316.47** |
| | **Interest Amounts** | | | **Accrued Interest:** | **$55,912.36** |
| | | | | **Accrued Interest Advance:** | **$182.83** |

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

### DEFENDANTS

ERIC E. HULL and KRISTINA HULL, husband and wife, and AGRI-TRADE LLC, a Washington Limited Liability Company

County of Residence of First Listed Defendant   Kittitas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | |
| ☐ 210 Land Condemnation<br>☒ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1345

Brief description of cause:
Foreclosure and Deficiency Judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*   JUDGE _____   DOCKET NUMBER _____

DATE
02/19/2019

SIGNATURE OF ATTORNEY OF RECORD
s/Brian M. Donovan

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 08/18)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.  **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.